# United States Court of Appeals
## For the First Circuit

Nos. 19-1787, 19-1900

MARK ANTHONY REID; ROBERT WILLIAMS, on behalf of himself and
others similarly situated; LEO FELIX CHARLES, on behalf of
himself and others similarly situated,

Petitioners, Appellants/Cross-Appellees,

v.

CHRISTOPHER J. DONELAN, Sheriff, Franklin County, Massachusetts;
LORI STREETER, Superintendent, Franklin County Jail & House of
Correction; THOMAS M. HODGSON, Sheriff, Bristol County,
Massachusetts; JOSEPH D. MCDONALD, JR., Sheriff, Plymouth
County, Massachusetts; STEVEN W. TOMPKINS, Sheriff, Suffolk
County, Massachusetts; ALEJANDRO MAYORKAS[*], Secretary of the
Department of Homeland Security; DENIS C. RIORDAN, Director,
Immigration and Customs Enforcement Boston Field Office; MERRICK
B. GARLAND, Attorney General; JEAN KING, Acting Director of the
Executive Office for Immigration Review; EXECUTIVE OFFICE FOR
IMMIGRATION REVIEW; DAVID DUBOIS, Sheriff, Strafford County, New
Hampshire; CHRISTOPHER BRACKETT, Superintendent, Strafford
County House of Corrections; TAE D. JOHNSON, Acting Director,
Immigration and Customs Enforcement,

Respondents, Appellees/Cross-Appellants.

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Patti B. Saris, U.S. District Judge]

---

[*] Pursuant to Fed. R. App. P. 43(c)(2), Secretary of Homeland
Security Alejandro Mayorkas, Attorney General Merrick B. Garland,
Acting Director Jean King, and Acting Director Tae D. Johnson have
been substituted as respondents.

Before
Lynch, Lipez, and Kayatta,
<u>Circuit Judges</u>.

_____

Anant K. Saraswat and Michael Tayag, with whom Michelle Nyein, Wolf, Greenfield & Sacks, P.C., Grace Choi, Kayla Crowell, Aseem Mehta, Alden Pinkham, Bianca Rey, Marisol Orihuela, Michael Wishnie, Jerome N. Frank Legal Services Organization, Michael K.T. Tan, and ACLU Immigrants' Rights Project were on brief, for appellants/cross-appellees.

William Tong, Attorney General of the State of Connecticut, Clare Kindall, Solicitor General of the State of Connecticut, Joshua Perry, Special Counsel for Civil Rights, Kathleen Jennings, Attorney General of the State of Delaware, Keith Ellison, Attorney General of the State of Minnesota, Aaron D. Ford, Attorney General of the State of Nevada, Hector H. Balderas, Attorney General of the State of New Mexico, Letitia James, Attorney General of the State of New York, Ellen F. Rosenblum, Attorney General of the State of Oregon, Thomas J. Donovan, Jr., Attorney General of the State of Vermont, Maura Healey, Attorney General of the Commonwealth of Massachusetts, Mark R. Herring, Attorney General of the Commonwealth of Virginia, and Karl A. Racine, Attorney General of the District of Columbia, on brief for the States of Connecticut, Delaware, Minnesota, Nevada, New Mexico, New York, Oregon, and Vermont, the Commonwealths of Massachusetts and Virginia, and the District of Columbia, amici curiae.

Alina Das, Rebecca Suldan, and Washington Square Legal Services, Immigrant Rights Clinic, on brief for Boston College Immigration Clinic, Boston University School of Law, Immigrants' Rights and Human Trafficking Program, Detention Watch Network, Families for Freedom, Greater Boston Legal Services, Harvard Law School Crimmigration Clinic, Immigrant Defense Project, Immigrant Legal Resource Center, Lawyers for Civil Rights, National Immigration Project of the National Lawyers Guild, and Suffolk University Law School Immigration Clinic, amici curiae.

Kevin P. Martin, Madelaine M. Cleghorn, and Goodwin Procter LLP, on brief for The American Immigration Lawyers Association, amicus curiae.

Sarah H. Paoletti and Transnational Legal Clinic, University of Pennsylvania Law School, on brief for International Law Professors and Human Rights Clinicians, amici curiae.

James J. Beha II and Morrison & Foerster LLP, on brief for Retired Immigration Judges and Board of Immigration Appeals Members, amici curiae.

Nina Rabin and Immigrant Family Legal Clinic, UCLA School of

Law, on brief for 35 Scholars and Researchers in Sociology, Criminology, Anthropology, Psychology, Geography, Public Health, Medicine, Latin American Studies, and Law, Whose Work Relates to Incarceration, Detention, and the Effect of U.S. Immigration Detention and Removal Policies on Migrant Populations, amici curiae.

Jonathan D. Selbin, Jason L. Lichtman, Katherine I. McBride, Elizabeth J. Cabraser, Andrew R. Kaufman, and Lieff Cabraser Heimann & Bernstein, LLP, on brief for Civil Law Professors, amici curiae.

Lauren E. Fascett, Senior Litigation Counsel, Civil Division, Office of Immigration Litigation, with whom Joseph H. Hunt, Assistant Attorney General, Civil Division, William C. Peachey, Director, District Court Section, Office of Immigration Litigation, Elianis N. Perez, Assistant Director, Sarah S. Wilson, Senior Litigation Counsel, Appellate Counsel Section, Office of Immigration Litigation, and Catherine M. Reno, Trial Attorney, Civil Division, Office of Immigration Litigation, were on brief for appellees/cross-appellants.

---

October 26, 2021

---

**KAYATTA**, <u>Circuit Judge</u>.  This class action, brought on behalf of noncitizen detainees held without possibility of release pending the completion of their removal proceedings, comes before this court for a second time.  <u>See</u> <u>Reid</u> v. <u>Donelan</u>, 819 F.3d 486 (1st Cir. 2016), <u>cert. denied</u>, 138 S. Ct. 1547 (2018), <u>withdrawn</u>, Nos. 14-1270, 14-1803, 14-1823, 2018 WL 4000993 (1st Cir. May 11, 2018).  On this occasion, we affirm the district court's ruling that there is no per se constitutional entitlement to a bond hearing after six months of detention.  We otherwise vacate the district court's declaratory and injunctive relief as advisory and remand for entry of judgment.  Our reasoning follows.

## I.

Petitioners represent a certified class of noncitizens who have been detained by the Department of Homeland Security's (DHS) Immigration and Customs Enforcement (ICE) division in Massachusetts and New Hampshire pursuant to 8 U.S.C. § 1226(c) for more than six months without a bond hearing.[1]  Section 1226(c), often called the mandatory detention provision, "carves out a statutory category of aliens who may <u>not</u> be released" during removal proceedings, outside of certain limited circumstances.

---

[1]  At the close of discovery in the district court case, 113 individuals had vested into the class; of those, 104 had received bond hearings as a result of the district court's injunction in this case.  By the time briefing was submitted in this appeal, the number of class members had risen to 158.

Jennings v. Rodriguez, 138 S. Ct. 830, 837 (2018) (emphasis in original). Under section 1226(c), the government "shall take into custody" any noncitizen who is inadmissible or deportable based on, among other things, a conviction for certain crimes involving moral turpitude, controlled substance offenses, aggravated felonies, certain firearm offenses, or certain acts associated with terrorism. 8 U.S.C. § 1226(c)(1). The statute allows release of a noncitizen properly subject to mandatory detention under section 1226(c) "only for witness protection purposes and only [then] if the alien shows he is not a danger to the community or a risk of flight." Reid v. Donelan, 390 F. Supp. 3d 201, 214 (D. Mass. 2019); see also 8 U.S.C. § 1226(c)(2).

The district court judge to whom the case was first assigned observed that the absence of any provision for release on bond from a prolonged detention might call the statute's constitutionality into question. The district court therefore read into section 1226(c) a requirement that detainees receive an individualized bond hearing once further detention becomes "unreasonable." Reid v. Donelan, 991 F. Supp. 2d 275, 277—78 (D. Mass. 2014). The court then further considered whether "reasonableness" should be assessed for each detainee based on his or her individual circumstances or whether the statute shall be read as requiring a "bright-line rule" limiting detention without a bond hearing to six months for all persons detained under

section 1226(c).  Id. at 279—80.  The court concluded that the statute should be read as mandating an individualized bond hearing after no more than six months of detention.  Id. at 279.  In the alternative, the court found that even if no bright-line rule applied, Reid's own individual circumstances required an opportunity for a bond hearing, citing the length of his fourteen-month detention, the uncertainty of his removal, and the absence of any dilatory tactics by Reid himself.  Id. at 282.

On appeal, this court reversed the holding that section 1226(c) included a bright-line rule that all persons detained must receive an individualized bond hearing after six months of detention.  Reid, 819 F.3d at 491, 496.  We agreed, though, that the statute included "an implicit reasonableness limitation," the length of which would turn on the individual circumstances presented by each detainee.  Id. at 494, 496, 502.  At the same time, we reviewed and affirmed the district court's alternative holding that section 1226(c) required an individualized bond hearing in Reid's own case.  Id. at 501.

Importantly for our present purposes, we observed that "the bright-line rule was an essential predicate to class certification."  Id.  In vacating the class certification order, we left it for the district court in the first instance to decide on remand whether "it is feasible to redefine the class."  Id. at 502.

The Supreme Court subsequently issued its decision in Jennings v. Rodriguez, rejecting the contention that section 1226(c) can be read as requiring bond hearings after six months of immigration detention. The Court found that section 1226(c) clearly precludes release on bond prior to the end of removal proceedings (except for witness protection purposes). 138 S. Ct. at 846-47. The Court reasoned that the canon of constitutional avoidance had no role to play when the statute itself spoke clearly on the matter at hand. Id. at 847. Whether the statute for that reason might be unconstitutional under some circumstances, the Court did not decide. See id. at 851.

Following Jennings, we withdrew our 2016 opinion and vacated the judgment. See Reid v. Donelan, Nos. 14-1270, 14-1803, 14-1823, 2018 WL 4000993, at *1 (1st Cir. May 11, 2018). In so doing, we affirmed the district court's judgment as to named plaintiff Mark Reid himself,[2] vacated the judgment as to the class members, and remanded the case to the district court for "reconsideration of the certification order." Id.

---

[2] The district court made only one ruling specific to Reid: that even if there was no presumption that detention over six months was unreasonable, the individualized circumstances of Reid's case rendered his continued detention unreasonable. The district court ordered a hearing. After the hearing, Reid posted bond and was released, following 400 days of civil detention. Reid, 819 F.3d at 492.

- 7 -

Following remand, a second district court judge took over the case. After briefing and argument, the district court allowed the addition of two new named plaintiffs to replace Reid. Reid v. Donelan, No. 13-30125-PBS, 2018 WL 5269992, at *3 (D. Mass. Oct. 23, 2018). The court also allowed plaintiffs to pursue a new theory: that "the Due Process Clause or Excessive Bail Clause requires that they at least have the chance to plead their case after six months at an individualized bond or reasonableness hearing." Id. at *5. Based on this new constitutional version of a bright-line six-month rule, the district court allowed the case to proceed as a class action. Analogizing to the earlier ruling certifying a class to advocate for relief based on an implied statutory requirement of a bright-line six-month rule, the court reasoned that the new theory similarly posed a common question that could generate a right to relief as a matter of law without reference to varying individual circumstances. Id. at *5—6. "A holding that the Constitution provides a right to a reasonableness hearing during a prolonged detention would resolve all class members' claims at once." Id. at *6.[3] The district court also expanded the class slightly to include "[a]ll individuals who are or will be detained within the Commonwealth of Massachusetts or

_____

[3] The "reasonableness hearing" sought by plaintiffs would take place before an immigration judge, who would determine "whether the continued denial of a bond hearing was reasonable."

the State of New Hampshire pursuant to 8 U.S.C. § 1226(c) for over six months and have not been afforded an individualized bond or reasonableness hearing."  Id. at *8.[4]

After cross-motions for summary judgment "on whether mandatory detention of the class members under 8 U.S.C. § 1226(c) for over six months violates the Fifth Amendment Due Process Clause or the Eighth Amendment Excessive Bail Clause," the district court partially granted and partially denied each side's motion and issued a declaratory order and a permanent injunction.  Reid, 390 F. Supp. 3d at 209-10, 227-28.

Most significantly for present purposes, the district court rejected petitioners' contention that every detainee must have the opportunity for a hearing after no more than six months of detention.  Instead, the court reasoned, determining the length of time that might constitutionally pass without a bond hearing requires "a fact-specific analysis" that turns on each "noncitizen's individual circumstances."  Id. at 209.

Rather than stopping at that point, the district court also issued declaratory and injunctive relief in favor of all class members, irrespective of their individual circumstances.  That

---

[4]  The class was defined originally as "all individuals who are or will be detained within the Commonwealth of Massachusetts pursuant to § 1226(c) for over six months and are not provided an individualized bond hearing."  Reid v. Donelan, 297 F.R.D. 185, 187 (D. Mass. 2014).

relief established detailed substantive and procedural rules whereby individual detainees might pursue release. The court decreed that detention without a bond hearing "is likely to be unreasonable if it lasts for more than one year [during removal proceedings before the agency], excluding any delays due to the alien's dilatory tactics." Looking even further ahead to possible bond hearings themselves, the district court also ordered the government to follow the "procedural rules mandated by due process at a bond hearing." Id. at 226. In the district court's view, those rules meant that in any bond hearing held for a class member whose individual circumstances warranted such a hearing, the government must prove the noncitizen "either dangerous by clear and convincing evidence or a risk of flight by a preponderance of the evidence." Id. at 228. The immigration court would not be allowed "to impose excessive bail, must evaluate the alien's ability to pay in setting bond, and must consider alternative conditions of release such as GPS monitoring that reasonably assure the safety of the community and the alien's future appearances." Id.

Both sides appeal.

## II.

We begin with a jurisdictional digression not raised by any party. In 2014, the district court ordered the government to conduct a bond hearing as to Mark Reid; after the hearing took

place, Reid posted bond and was released after 400 days of civil detention. Reid, 819 F.3d at 492. After detaining new class representative Leo Charles for more than a year, the government announced he was not properly subject to mandatory detention and released him the day before the government's brief in his case was due. And the government deported the last class representative, Robert Williams, after eleven months of mandatory detention, but he then won his petition for review. Petitioners point to no facts at all showing that renewed detention is imminent, or even likely. The government in turn disavows any intent to detain them further. Their claims are therefore at this point moot.

Nevertheless, post-certification mootness of the individual claims of a class representative regarding an actual prior detention does not necessarily moot either the claims of the class or the case as a whole. See Sosna v. Iowa, 419 U.S. 393, 402 (1975) ("[While] there must be a live controversy at the time [a c]ourt reviews [a] case," "[t]he controversy may exist . . . between a named defendant and a member of the class represented by the named plaintiff, even though the claim of the named plaintiff has become moot."); Genesis Healthcare Corp. v. Symczyk, 569 U.S. 66, 74 (2013) (citing Sosna for the proposition that "a class action is not rendered moot when the named plaintiff's claim becomes moot after the class has been duly certified" (emphasis in original)). "The Court reasoned [in Sosna] that when a district

court certifies a class, 'the class of unnamed persons described in the certification acquire[s] a legal status separate from the interest asserted by [the named plaintiff].'" Genesis Healthcare Corp., 569 U.S. at 74-75 (quoting Sosna, 419 U.S. at 399-402). We therefore proceed to the merits of the appeal.[5]

### III.

We consider next petitioners' argument that the district court erred in refusing to hold that all persons detained under section 1226(c) have a constitutional right to a hearing concerning the reasonableness of their continued detention after they have been detained longer than six months. For the following reasons, we agree with the district court.

First, we adhere to the notion that "the Due Process Clause imposes some form of 'reasonableness' limitation upon the duration of detention . . . under [section 1226(c)]," Reid, 819 F.3d at 494. We nevertheless also continue to view the Supreme Court's ruling in Demore v. Kim, 538 U.S. 510, 530-31 (2003), "as implicitly foreclosing our ability to adopt a firm six-month rule"

---

[5] The government does not argue that the failure to designate a new class representative should affect this appeal, nor does it challenge the adequacy of the currently named class representatives under Rule 23(a) of the Federal Rules of Civil Procedure. In the absence of prejudice to the defendant, courts have consistently granted plaintiffs leave to substitute named representatives when a class has already been certified and the certified representative becomes unavailable. 1 McLaughlin on Class Actions: Law & Practice § 4:36 (17th ed. 2020).

- 12 -

equally applicable to all section 1226(c) detainees, Reid, 819 F.3d at 497.[6] Jennings, which caused the withdrawal of our previous opinion in this case, did nothing to call that view into question.

It requires no reading of tea leaves to see that Demore is fatal to the claim here that every single person detained for six months must be entitled to a bond hearing. The detainee in Demore, Hyung Joon Kim, had already been detained for six months, yet the Court reversed the lower court's order requiring the government to hold a bond hearing. Demore, 538 U.S. at 531. It is simply not possible to read Demore as anticipating that the Court's opinion would have been different if Kim's detention had lasted one day more.

That is not to say that Demore categorically blessed six-month detentions. The Supreme Court had been advised (incorrectly, it would appear)[7] that section 1226(c) detention

_____

[6] Petitioners in Demore challenged the constitutionality of detention pursuant to section 1226(c). The Court denied the challenge, due in part to what the Court viewed as "the limited time period necessary for . . . removal proceedings." Demore, 538 U.S. at 526.

[7] In Jennings, the government informed the Court that the statistics it provided in Demore had been incorrect, and that "[d]etention normally lasts twice as long as the [g]overnment then said it did." Jennings, 138 S. Ct. at 869 (Breyer, J., dissenting); see also id. at 860 (Breyer, J., dissenting) ("The classes before us consist of people who were detained for at least six months and on average one year.").

In the instant case, petitioners represent that the median time class members spent in detention, prior to this appeal, is

lasts "roughly a month and a half in the vast majority of cases in which it is invoked, and about five months in the minority of cases in which the alien chooses to appeal." Demore, 538 U.S. at 530. Furthermore, in describing Kim's six-month detention, the Court observed that some portion of that detention was likely the result of Kim's own request for a continuance in his remand proceedings. Id. at 531 n.15. While the Court's holding implicitly rejected an across-the-board rule that some hearing must always be held within six months, the opinion would seem to leave open the possibility that in most individual cases, detentions of six months (or of even less time) might necessitate some type of hearing to see if continued detention is reasonably necessary to serve the statute's purposes. Indeed, in the very case before us, the government has conceded "that mandatory detention under [section] 1226(c) without a bond hearing violates the Due Process Clause when it becomes unreasonably prolonged in relation to its purpose in ensuring the removal of deportable criminal noncitizens." Reid, 390 F. Supp. 3d at 215.

Petitioners argue that another Supreme Court decision, Zadvydas v. Davis, 533 U.S. 678, 701 (2001), nevertheless calls

_____

363 days, with 25% detained for fewer than eight and a half months and 25% detained for more than a year and a half. The four longest terms of detention prior to this appeal were 1,541, 1,291, 1,101, and 1,048 days -- in other words, between almost three years and more than four years.

- 14 -

for a per se six-month limit on detention without a bail hearing. But Zadvydas was decided before Demore. And the petitioners in Zadvydas challenged only their detention pending the execution of their final orders of removal, see 533 U.S. at 682, which the Court in Demore recognized as "materially different" from detention under section 1226(c), see 538 U.S. at 527-28. So, too, is petitioners' analogy to Sixth Amendment case law inapt, as the district court explained. See Reid, 390 F. Supp. 3d at 218.

Petitioners also seek to analogize to Cheff v. Schnackenberg, 384 U.S. 373, 380 (1966) (plurality opinion) (ruling that "sentences exceeding six months for criminal contempt may not be imposed by federal courts absent a jury trial or waiver thereof"), United States v. Comstock, 560 U.S. 126, 131 (2010) (describing a statute which, in contrast to section 1226(c), requires "judicial hearings at the request of the confined person at [six-]month intervals"), and Mathews v. Eldridge, 424 U.S. 319, 335 (1976) (describing general requirements for procedural due process). But these analogies provide insufficient support for rejecting the much more direct message strongly implied by Demore.

Petitioners alternatively contend that detention under section 1226(c) beyond six months without an individualized hearing violates the Excessive Bail Clause of the Eighth Amendment. See U.S. Const. amend. VIII ("Excessive bail shall not be required."). Some jurists have opined that "excessive" conditions

may include "refusal to hold any bail hearing at all." See Jennings, 138 S. Ct. at 862 (Breyer, J., dissenting); Carlson v. Landon, 342 U.S. 524, 569 (1952) (Burton, J., dissenting); Castañeda v. Souza, 810 F.3d 15, 44 (1st Cir. 2015) (en banc) (Torruella, J., concurring) (noting "the ongoing, institutionalized infringement of the right to bail"). But petitioners point to no court that has treated the prohibition on excessive bail as categorically requiring an opportunity for release within a specific amount of time. Nor do they provide any convincing reason to think that the Excessive Bail Clause would require a bond hearing when the Due Process Clause does not.

Nor, finally, does our recent opinion in Hernandez-Lara v. Lyons, 10 F.4th 19 (1st Cir. 2021), call for a different result. The petitioner in that case was detained under section 1226(a), not section 1226(c). We were therefore able to distinguish Demore fairly, id. at 35–36, citing the "quite different" circumstances, id. at 36, and noting that detention under section 1226(a) (of persons not convicted of crimes triggering 1226(c) detention) often lasted longer than the "brief" detention at issue in Demore, id. at 30.

## IV.

Having correctly ruled that six months of detention did not on its own necessarily trigger a constitutional right to a reasonableness hearing or bond hearing for a person already

- 16 -

convicted of a crime that triggers detention under section 1226(c), and that any such relief must be adjudicated on an individual basis, the district court nevertheless proceeded to issue declaratory and injunctive relief specifying how district courts and immigration officials should adjudicate requests for bond. Reid, 390 F. Supp. 3d at 227-28. The district court sought to "provide guidance in determining the reasonableness of prolonged mandatory detention under § 1226(c)." Id. at 219. That "guidance" took the form of a binding declaration, holding that

> mandatory detention without a bond hearing under 8 U.S.C. § 1226(c) violates due process when the detention becomes unreasonably prolonged in relation to its purpose in ensuring the removal of deportable criminal aliens. The most important factor in determining the reasonableness of a criminal alien's mandatory detention is the length of the detention. Mandatory detention without a bond hearing is likely to be unreasonable if it lasts for more than one year, excluding any delays due to the alien's dilatory tactics. A criminal alien subject to mandatory detention without a bond hearing under § 1226(c) must bring a habeas petition in federal court to challenge his detention as unreasonably prolonged. If the court agrees, the alien is entitled to a bond hearing before an immigration judge.

Id. at 227.

The district court also issued a mandatory injunction dictating the burdens of proof and the substantive factors that would control in any future bond hearings in immigration court. Specifically, it ordered that

> [f]or any bond hearing held for a class member, . . . the immigration court [must] require the [g]overnment to prove that the alien is either dangerous by clear and convincing evidence or a risk of flight by a preponderance of the evidence. The immigration court may not impose excessive bail, must evaluate the alien's ability to pay in setting bond, and must consider alternative conditions of relief[,] such as GPS monitoring[,] that reasonably assure the safety of the community and the alien's future appearances.

Id. at 228.

Both sides appeal from this declaratory and injunctive relief. Petitioners complain about being ordered to bring their requests for bond hearings before district courts rather than immigration judges; they also assert that a detainee should be presumptively entitled to a bond hearing well before the passage of one year of detention. And they object to the ruling that they can be denied bail if the government proves they are a flight risk by a preponderance of the evidence, rather than by clear and convincing evidence. The government marshals a more global assault on the declaratory and injunctive relief. It argues, among other things, that the district court's rulings are free-floating advisory opinions untethered to any actual case or controversy between any of the parties.

As the district court explained, the class was certified as a Rule 23(b)(2) class, Reid, 297 F.R.D. at 194, on the basis of a single common question that bound together its members: "whether

- 18 -

the Constitution . . . requires an individualized hearing for those detained under § 1226(c) beyond six months," Reid, 2018 WL 5269992, at *4. That question satisfied the requirements of Rule 23(a)(2) because its adjudication would "resolve an issue that is central to the validity of each one of the claims in one stroke." Id. at *5 (quoting Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350 (2011)). In plain terms, the question could be answered for all class members with nary an eye toward their individual circumstances; if the answer were "yes," each individual would get a hearing automatically, while a "no" would leave each person as before. The need for an answer to the question was also pressing: Petitioners had all been detained without a bond hearing for more than six months, and were therefore already due more process than they had received if they were correct that a bond hearing must be provided in all instances after no more than six months of detention.

When the district court answered the class's common question by holding that there exists no per se entitlement to a bond hearing after six months of detention under section 1226(c), Reid, 390 F.3d at 216, every class member had a final answer to the common question central to the claim that they shared. Both the Supreme Court, see Jennings, 138 S. Ct. at 851-52, and a prior panel of this court, see Reid, 819 F.3d at 501-02, had hinted that the resolution of that common question against the class would

- 19 -

remove the justification for any further litigation on behalf of a class in this action.

The district court disagreed, and issued the decrees discussed above regarding issues that might or might not arise for some but certainly not all class members and that had yet to be considered by the tribunals in which the issues would arise if they did arise. No class member is able to say with reasonable assurance whether he or she will receive a hearing. Indeed, many class members will likely not get a bond hearing. And without a hearing, a class member has no legal interest in the procedures to be followed in hearings held for others. We therefore cannot say that the court's declaration and injunction, beyond rejecting the per se six-month claim, resolves "an issue that is central to the validity of each [person's] claims in one stroke." Wal-Mart, 564 U.S. at 350.

Although a class can be certified even if there are some individual issues that can be efficiently and fairly adjudicated individually, see In re Asacol Antitrust Litigation, 907 F.3d 42, 51—52(1st Cir. 2018), no precedent of which we are aware supports using a properly certified class as a bootstrap to then adjudicate, on a class-wide basis, claims that hinge on the individual circumstances of each class member.

It does not matter that some class members' circumstances suggested a more concrete and imminent need for a

ruling on the applicable burdens of proof at a bond hearing. A Rule 23(b)(2) class, such as this one, may only be maintained if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2); see also Wal-Mart, 564 U.S. at 360 ("The key to the (b)(2) class is 'the indivisible nature of the injunctive or declaratory remedy warranted -- the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them.'" (quoting Richard A. Nagareda, Class Certification in the Age of Aggregate Proof, 84 N.Y.U. L. Rev. 97, 132 (2009))); 7AA Charles Alan Wright et al., Federal Practice & Procedure § 1784.1 (3d ed. 2021) ("[T]he common-question and superiority standards of Rule 23(b)(3) are in some ways much less demanding than that of either Rule 23(b)(1) or Rule 23(b)(2) . . . ."); 1 McLaughlin on Class Actions: Law & Practice § 5:15 (17th ed. 2020) ("Indeed, a Rule 23(b)(2) class must actually have more cohesiveness than a Rule 23(b)(3) class." (collecting cases)). A class consisting of some members who might be entitled to a bond hearing and others who are not lacks sufficient cohesiveness to obtain relief regarding the conduct of those hearings under Rule 23(b)(2).

With its resolution of the common class claim complete, the district court was left with no plaintiff possessing any current or imminent stake in the resolution of assorted issues addressed in the court's declaratory and injunctive relief, including the allocation of the burden of proof and bail terms. Reid's claim was long ago mooted. And his class claim, as we have explained, did not encompass the remaining issues addressed by the court. Whether we call this a lack of standing, see, e.g. In re Asacol Antitrust Litigation, 907 F.3d at 48 ("In a class action suit with multiple claims, at least one named class representative must have standing with respect to each claim." (quoting 1 William B. Rubenstein, Newberg on Class Actions § 2:5 (5th ed. 2012))), or the absence of a case or controversy, see U.S. Const. art. III, § 2, cl. 1; Carney v. Adams, 141 S. Ct. 493, 498 (2020) ("We have long understood that constitutional phrase to require that a case embody a genuine, live dispute between adverse parties, thereby preventing the federal courts from issuing advisory opinions."), the result is the same: The district court lacked the jurisdiction necessary to turn its considered guidance into binding equitable relief.

We recognize that having clear standards for determining whether and when a section 1226(c) detainee need be released pending the conclusion of the detainee's removal proceedings would make life simpler for all involved. Such standards might arise in

the form of agency regulations. Or they might emerge like common law rules of precedential force, through case-by-case adjudication, as in our recent decision in Hernandez-Lara. We simply hold that this particular Rule 23(b)(2) class action does not provide a vehicle for preemptively announcing such rules.

**V.**

For the foregoing reasons, we affirm the judgment against the class rejecting the claim that persons detained for six months under section 1226(c) are automatically entitled to a hearing before an IJ that might lead to their release on bond pending the conclusion of removal proceedings. We otherwise vacate the district court's declaratory and injunctive orders, and remand for the entry of final judgment in accord with this opinion. Nothing in this opinion precludes any class member from pursuing a claim that he or she is entitled to a bond hearing or to release based on his or her individual circumstances. Each party is to bear its own costs.

**- Dissenting Opinion Follows -**

**LIPEZ, Circuit Judge, dissenting.** My colleagues rely on a "message strongly implied by the Supreme Court" to conclude that certain noncitizens detained by the government for six months have no right to a bond hearing to determine the need for their continued detention. I disagree that the Supreme Court has tipped its hand on that issue and, perhaps more importantly, I disagree that it is appropriate to engage in such predictive analysis. Rather, we should address the novel constitutional question presented to us and determine through the familiar due process balancing test the procedural safeguards necessary to protect the liberty interest of noncitizens detained pursuant to 8 U.S.C. § 1226(c). In my view, that balancing demonstrates that such individuals are entitled to a bond hearing when they have been detained for six months.[8] I therefore dissent.[9]

---

[8] Perhaps to offer an alternative as a compromise, petitioners propose that a "reasonableness" hearing be held at the six-month point of detention to determine detainees' entitlement to a bond hearing. As I shall explain, detention without a bond hearing for more than six months is a due process violation for all detainees. Accordingly, there would be no separate "reasonableness" question for the IJ to resolve.

[9] Because my view is that a six-month rule should apply equally to all class members, I do not confront the class certification issues that lead the majority to vacate the declaratory and injunctive relief ordered by the district court. I limit my dissent to the core constitutional issue -- entitlement to a hearing after six months.

# I.

The majority's rejection of a hearing requirement after six months rests on its reading of Demore v. Kim, 538 U.S. 510 (2003), where the Supreme Court addressed a facial challenge to § 1226(c). The Court considered the question of whether it is constitutional to detain noncitizens with certain criminal convictions without a bond hearing. The Court answered in the affirmative. Significantly, however, its analysis did not address any specific timeframe. Here, we are faced with an as-applied challenge to § 1226(c) that requires us to determine whether it is constitutional to detain noncitizens with certain criminal convictions without a bond hearing for more than six months. The Supreme Court's answer to the question in Demore does not dictate the answer to the question before us.

In other words, while Demore tells us that it is constitutional to detain this category of noncitizens without a bond hearing for some amount of time, Demore does not address the constitutional status of detentions that are prolonged. To illustrate the difference, I offer this example: Is it constitutional to detain a citizen without an immediate judicial determination of probable cause that she committed a crime? Yes. See Cty. of Riverside v. McLaughlin, 500 U.S. 44, 58-59 (1991). Is it constitutional to detain a citizen for more than 48 hours without a judicial determination of probable cause? No. Id. Put

simply, the passage of time may make a difference when one's liberty is in the balance. As the Third Circuit observed, the benefit to the government of presuming that a class of noncitizens should be detained to prevent flight or danger to the community eventually will be outweighed by those individuals' loss of liberty: "'At this tipping point' . . . due process requires the [g]overnment to justify continued detention at a bond hearing." Santos v. Warden Pike Cty. Corr. Facility, 965 F.3d 203, 209 (3rd Cir. 2020) (quoting Chavez-Alvarez v. Warden York Cty. Prison, 783 F.3d 469, 475 (3d Cir. 2015)).

In reading rejection of a six-month rule into Demore, my colleagues necessarily rely on the fact that the petitioner there, Hyung Joon Kim, had been detained for more than six months by the time the Supreme Court decided his case. But the six-month mark was neither a factor in Kim's arguments to the Court nor a basis for the Court's ruling. Rather, "the petitioner argued that his detention was unconstitutional from the outset due to the categorical nature of the mandatory detention regime." Reid v. Donelan, 819 F.3d 486, 493 (1st Cir. 2016), withdrawn, Nos. 14-1270, 14-1803, 14-1823, 2018 WL 4000993 (1st Cir. May 11, 2018).[10]

---

[10] Our prior decision in this case, which concluded that § 1226(c) includes "an implicit reasonableness requirement," Reid, 819 F.3d at 502, was withdrawn following the Supreme Court's ruling in Jennings v. Rodriguez, 138 S. Ct. 830 (2018). The Court in Jennings held that the statute itself contains no time limit on detention. See id. at 846-47.

- 26 -

The Court's silence on an issue that was not raised does not create precedent. We are bound by the precedential holdings and reasoning of the Supreme Court, not by "speculation about what the Supreme Court might or might not do in the future." Columbia Nat. Res., Inc. v. Tatum, 58 F.3d 1101, 1107 n.3 (6th Cir. 1995). Moreover, to the extent reading tea leaves is appropriate, the Court's decision in Demore appears to forecast different considerations -- with the possibility of a different outcome -- for prolonged detentions. As our prior decision in this case noted, "the brevity of the detention [was] central to" the Court's holding in Demore that § 1226(c) permissibly "'require[s] that persons such as respondent be detained for the brief period necessary for their removal proceedings.'" Reid, 819 F.3d at 493-94 (quoting Demore, 538 U.S. at 513). The Supreme Court made repeated reference to the limited timeframe at issue. See Demore, 538 U.S. at 513 ("brief period"), 523 (same), 526 ("limited period"), 529 n.12 ("[t]he very limited time of the detention"); 531 ("limited period"). The Court also revealed what it meant by the "brief period" it was contemplating: "[T]he detention at stake under § 1226(c) lasts roughly a month and a half in the vast majority of cases in which it is invoked, and about five months in

- 27 -

the minority of cases in which the alien chooses to appeal." Id. at 530.[11]

We now know that the timing assumptions underlying the Court's analysis in Demore were wrong. As my colleagues note, the government informed the Court during the proceedings in another case involving § 1226(c), Jennings v. Rodriguez, 138 S. Ct. 830 (2018), that "[d]etention normally lasts twice as long as the [g]overnment then said it did." Id. at 869 (Breyer, J., dissenting); see also id. at 860 (Breyer, J., dissenting) ("The classes before us consist of people who were detained for at least six months and on average one year."). And it is worth repeating the data reported by petitioners in this case, which my colleagues acknowledge in a footnote. The median time that class members spent in detention, before the appeal, was 363 days -- i.e., a year. Twenty-five percent of the class members were detained for more than a year-and-a-half, and only 25% were detained for less than eight-and-a-half months. These numbers are starkly different from the Supreme Court's understanding in Demore that five months was a long and uncommon period of detention under § 1226(c).

My colleagues also acknowledge that Demore seemingly left "open the possibility that in most individual cases,

---

[11] The Court noted that Kim's six-month detention was "somewhat longer than the average," but pointed out that he had requested a continuance of his removal hearing. Demore, 538 U.S. at 530-31.

detentions of six months (or of even less time) might necessitate some type of hearing to see if continued detention is reasonably necessary to serve the statute's purposes." The government, too, recognizes that mandatory detention without a bond hearing will violate the Due Process Clause "when it becomes unreasonably prolonged in relation to its purpose." See Reid v. Donelan, 390 F. Supp. 3d 201, 215 (D. Mass. 2019). Nonetheless, my colleagues decline even to engage in a due process analysis to evaluate the petitioners' contention that, at least after six months, every noncitizen detained under § 1226(c) is entitled to a bond hearing to determine if continued detention would be improper. See Demore, 538 U.S. at 532-33 (Kennedy, J., concurring) ("Were there to be an unreasonable delay by the INS [Immigration and Naturalization Service] in pursuing and completing deportation proceedings, it could become necessary then to inquire whether the detention is not to facilitate deportation, or to protect against risk of flight or dangerousness, but to incarcerate for other reasons.").

As I have explained, the rationale for this sidestepping -- a supposed message from the Supreme Court in Demore -- simply does not withstand scrutiny. My colleagues' avoidance of the constitutional question posed here is thus unsupportable because the inference they draw from Demore lacks both legal and factual foundation and because reading tea leaves is not our proper role. See Sopo v. U.S. Att'y Gen., 825 F.3d 1199, 1212 (11th Cir.

- 29 -

2016), vacated, 890 F.3d 952 (11th Cir. 2018) ("Outside of Justice Kennedy's Demore concurrence, the Supreme Court has never addressed how long under § 1226(c) the government can detain a criminal alien[.]"); Rodriguez v. Robbins, 715 F.3d 1127, 1137 (9th Cir. 2013) ("[W]e have consistently held that Demore's holding is limited to detentions of brief duration.").[12]

I thus turn to the petitioners' contention that all noncitizens held pursuant to § 1226(c) are entitled to a bond hearing after six months of detention.

## II.

The analysis in our recent decision in Hernandez-Lara v. Lyons, 10 F.4th 19 (1st Cir. 2021), exemplifies the proper doctrinal approach for determining what due process protections must be afforded to immigration detainees. There, we evaluated the proper allocation of the burden of proof at an immigration bond hearing by means of the three-part balancing test articulated in Mathews v. Eldridge, 424 U.S. 20 319, 335 (1976). As we explained,

> The Mathews factors [to be balanced] are: (1) "the private interest that will be affected by

---

[12] Several of the cases I cite in this dissent were vacated or otherwise diminished as authority as a result of the Supreme Court's decision in Jennings holding, as a matter of statutory construction, that § 1226(c) does not provide for release on bond -- with limited exceptions -- while removal proceedings are ongoing. See 138 S. Ct. at 846-47. I rely on these cases solely for observations and principles unaffected by the holding in Jennings.

the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the [g]overnment's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."

Hernandez-Lara, 10 F.4th at 28 (quoting Mathews, 424 U.S. at 335).

The majority dismisses Mathews as having little relevance to this case. They do so, however, as part of their deference to the message they draw from Demore and, hence, neglect to give due consideration to the appropriate analysis for the distinct constitutional question raised in this case. Indeed, the long-established Mathews framework is well suited to the constitutional due process question here, just as it served as an appropriate guide for our assessment of the due process claim in Hernandez-Lara.[13] See, e.g., Hamdi v. Rumsfeld, 542 U.S. 507, 528–29 (2004) ("The ordinary mechanism that we use for balancing such serious competing interests, and for determining the procedures that are necessary to ensure that a citizen is not 'deprived of life, liberty, or property, without due process of law,' . . . is

_____

[13] In Hernandez-Lara, we held that the Due Process Clause of the Fifth Amendment requires that the government bear the burden of proving at a bond hearing that a noncitizen detained pursuant to 8 U.S.C. § 1226(a) is a danger or flight risk and thus not entitled to release. See 10 F.4th at 23-24. Although this case involves a different statutory provision, the due process principles we applied in Hernandez-Lara are equally applicable here.

- 31 -

the test that we articulated in Mathews[.]"); Velasco Lopez v. Decker, 978 F.3d 842, 851 (2d Cir. 2020) (applying the Mathews test to determine the procedural protections required for immigration detention pursuant to § 1226(a)); Diouf v. Napolitano, 634 F.3d 1081, 1090 (9th Cir. 2011) (applying the Mathews test to determine the procedural protections required for immigration detention pursuant to § 1231(a)(6)).

The analysis here should proceed in the same fashion as in Hernandez-Lara, with consideration of the three factors as they pertain to prolonged detention under § 1226(c).  I therefore proceed with that analysis.

**A. Liberty Interest**

In Hernandez-Lara, we summarized the first Mathews factor, the private interest at stake, as follows:

> "Freedom from imprisonment -- from government custody, detention, or other forms of physical restraint -- lies at the heart of the liberty that [the Due Process] Clause protects." Zadvydas v. Davis, 533 U.S. 678, 695 (2001) (citing Foucha v. Louisiana, 504 U.S. 71, 80 (1992)).  The Supreme Court has repeatedly affirmed that "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." United States v. Salerno, 481 U.S. 739, 755 (1987); see also Foucha, 504 U.S. at 80 ("We have always been careful not to minimize the importance and fundamental nature of the individual's right to liberty."). For this reason, "civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process

- 32 -

> protections." <u>Addington</u> [v. <u>Texas</u>, 441 U.S.
> [418,] 425 [(1979)] (emphasis added).

10 F.4th at 28. We stated that there was "no question" that immigration detention constituted a "substantial deprivation of liberty," and emphasized that a lack of citizenship does not preclude an interest in freedom from detention. <u>Id.</u> ("[T]he fact that some detention is permissible does not change the fact that a detainee suffers significant liberty deprivations."). We thus concluded that the first <u>Mathews</u> factor "weigh[ed] heavily in Hernandez's favor." <u>Id.</u> at 30.

Here, importantly, we have the additional factor that each of the <u>Reid</u> class members was detained under § 1226(c) without a hearing for at least six months.[14] Hence, we must take into account the costs that accrue with prolonged detention.[15] While detention of any length implicates a liberty interest, prolonged detention inevitably has greater consequences for the individual

---

[14] As noted above, in many cases, the detention was far longer. Petitioners report that, among the 113 <u>Reid</u> class members, the average length of detention was nearly a full year. The class includes individuals who were detained for 1,541 days (approximately 4.2 years), 1,291 days (3.5 years), 1,101 days (3 years), and 1,048 days (2.8 years).

[15] In <u>Hernandez-Lara</u>, we expressly chose not to address the petitioner's prolonged detention argument and instead considered the "potential length of detention" as a factor in the liberty interest analysis. <u>See</u> 10 F.4th at 25 n.2, 30 n.4. This case differs in that we address the claims of individuals who have already been detained for six months, and the length of their detention is central to their due process claim.

than short-term detention. See Zadvydas, 533 U.S. at 701 (stating that, "as the period of . . . confinement grows," the government must provide stronger justifications for detention); Gerstein v. Pugh, 420 U.S. 103, 114 (1975) ("The consequences of prolonged detention may be more serious than the interference occasioned by arrest. Pretrial confinement may imperil the suspect's job, interrupt his source of income, and impair his family relationships."); Hernandez-Lara, 10 F.4th at 29 (noting that "prolonged detention" may create a weightier liberty interest); Diop v. ICE/Homeland Sec., 656 F.3d 221, 234 (3d Cir. 2011) ("[T]he constitutional case for continued detention without inquiry into its necessity becomes more and more suspect as detention continues[.]"); Diouf, 634 F.3d at 1091–92 ("When detention crosses the six-month threshold and release or removal is not imminent, the private interests at stake are profound."). Extended detention can cause unique harms "that differ in degree and kind from those suffered by short-term detainees." Br. of Amici Curiae 35 Scholars, at 4-22 (describing harms specific to prolonged detention, including physical harm caused by insufficient medical care, psychological harm to detainees and their families, and economic harms stemming from loss of employment).

Giving significance to detentions that reach six months' duration is not a novel idea. In Zadvydas, the Supreme Court recognized the six-month mark as a constitutional tipping point.

See 533 U.S. at 701. When detention reaches that length, the due process calculus shifts. See id. Six months has also been identified as consequential outside the immigration context. In multiple cases, the Supreme Court has endorsed a jury-trial requirement for crimes punishable with incarceration of more than six months. See Muniz v. Hoffman, 422 U.S. 454, 477 (1975); Baldwin v. New York, 399 U.S. 66, 73-74 (1970); Duncan v. State of La., 391 U.S. 145, 161 (1968); Cheff v. Schnackenberg, 384 U.S. 373, 379-380 (1966) (plurality opinion). As the Supreme Court has put it, "It is not difficult to grasp the proposition that six months in jail is a serious matter for any individual." Muniz, 422 U.S. at 477. And, as we recognized in Hernandez-Lara, immigration "detention" can be indistinguishable from "imprisonment"; the petitioner there "was incarcerated alongside criminal inmates . . . for over ten months." 10 F.4th at 28.

Accordingly, we should be readily concluding that detention in excess of six months creates a heightened liberty interest and should be afforded more weight in the Mathews balancing formula than the liberty interest in freedom from any detention -- a distinction whose importance is reflected in the Supreme Court's focus in Demore on the brevity of the detention it considered there. See 538 U.S. at 513, 523, 526, 529 n.12, 531. Thus, the first Mathews factor weighs strongly in favor of petitioners -- even more so than in our Hernandez-Lara analysis.

- 35 -

**B. Risk of Erroneous Deprivation and Probable Value of Safeguards**

In Hernandez-Lara, we concluded that the misallocation of the burden of proof at a bond hearing -- requiring the detainee to prove that she is not a flight risk or a danger to the community, rather than requiring the government to prove that she is -- created a high risk of erroneous deprivation of liberty. 10 F.4th at 30-32. Section 1226(c) makes no provision for a bond hearing at all. In that respect, the risk of erroneously detaining a person who is not a danger or flight risk looms larger than in Hernandez-Lara.

However, mandatory detention under § 1226(c) is premised on Congress's findings that so-called "criminal aliens" categorically present a higher risk of flight and danger to the community. See Demore, 538 U.S. at 518-20. In Demore, the Supreme Court recognized that this presumption has a solid evidentiary foundation. See id. at 528 ("The evidence Congress had before it certainly supports the approach it selected[.]"). Thus, the risk of error is offset to some degree by the fact that § 1226(c) detainees, as a class, may be more likely to present a flight risk or a danger to the community than other noncitizen detainees.

Still, Congress's categorical presumption of dangerousness and flight risk for "criminal aliens" inevitably will affect many individuals to whom the presumption should not apply. Section 1226(c) sweeps broadly, encompassing not only those

who have committed violent felonies, but also those who have committed nonviolent crimes and simple drug offenses. The difference between a § 1226(a) discretionary detainee and a § 1226(c) mandatorily detained "criminal alien" may be a conviction or two for shoplifting or marijuana possession.[16] While Congress's presumption of flight risk and dangerousness for § 1226(c) detainees is important in the due process analysis, the only method for identifying those who are not properly detained based on that presumption is through individualized assessments. See Lora v. Shanahan, 804 F.3d 601, 605 (2d Cir. 2015), cert. granted, judgment vacated, 138 S. Ct. 1260 (2018) ("[T]his group includes non-citizens who, for a variety of individualized reasons, are not dangerous, have strong family and community ties, are not flight risks and may have meritorious defenses to deportation at such time as they are able to present them.").

The detainees in this case are illustrative. The record indicates that 50 of the 104 Reid class members who eventually received bond hearings were released from immigration detention

---

[16] See, e.g., Vallejo v. Decker, No. 18-CV-5649 (JMF), 2018 WL 3738947, at *2 (S.D.N.Y. Aug. 7, 2018) (noncitizen subject to § 1226(c) because of one shoplifting conviction and one receipt of stolen property conviction); Vazquez v. Green, Civil Action No. 16-3451 (JMV), 2016 WL 6542833, at *4 (D.N.J. Nov. 3, 2016) (noncitizen subject to § 1226(c) because of two marijuana possession convictions).

because they were found not to pose a danger or a flight risk.[17] In other words, the data shows that nearly half of the individuals in this class were detained erroneously. Whether or not that percentage is typical, it is some indication that a significant number of individuals may be unnecessarily -- and, hence, improperly -- detained for extended periods of time. Hence, the risk of the erroneous deprivation of liberty inherent in mandatory detention is substantial, and the probable value of the procedural safeguard of a bond hearing is high.

The majority does leave open an avenue for a noncitizen detained under § 1226(c) to receive a bond hearing by seeking a writ of habeas corpus in federal court on the ground that, in her individual circumstances, detention is unreasonable. For multiple reasons, however, a federal habeas claim is an inadequate substitute for an automatic bond hearing at six months. Most importantly, habeas litigation is simply not a viable option for most detainees. As we observed in Hernandez-Lara, detainees "very often cannot obtain counsel," "will likely experience difficulty in gathering evidence on their own behalf," and "often lack full proficiency in English." 10 F.4th at 30. In addition, as we have

---

[17] Bond hearings were held for some class members pursuant to the district court's decision in this case. See Reid v. Donelan, 22 F. Supp. 3d 84, 93 (D. Mass. 2014). The district court's judgment with respect to the hearing requirement was subsequently vacated by this court. See Reid, 819 F.3d at 502-03.

previously recognized, habeas litigation is particularly "complicated and time-consuming, especially for aliens who may not be represented by counsel." Reid, 819 F.3d at 498. Hence, for most detainees, the possibility of habeas relief -- a procedure outside the normal course of immigration proceedings -- is simply illusory. See Doe v. Gallinot, 657 F.2d 1017, 1023 (9th Cir. 1981) (stating that "[t]he bare existence of optional habeas corpus review does not, of itself, alleviate due process concerns" regarding involuntary civil commitment).

Moreover, for those detainees who have the wherewithal to file a habeas petition, the process will likely be so slow that their detentions will become significantly more prolonged as they await resolution in federal court. Even when a detainee is successful in the habeas process, the timeframe between filing a petition and receiving a bond hearing is likely to be at least several months.[18] See Lora, 804 F.3d at 615 (noting "the random outcomes resulting from individual habeas litigation in which some detainees are represented by counsel and some are not, and some

_____

[18] See Br. of Amici Curiae Boston College Immigration Clinic, et al., at 26 (citing a 2016 study of successful First Circuit habeas challenges to mandatory detention, which found that the litigation took over seven months on average); Br. of Amicus Curiae American Immigration Lawyers Association, at 16 (collecting cases of successful habeas challenges to § 1226(c) detention and noting that it took between four and eleven months for each case to resolve).

habeas petitions are adjudicated in months and others are not adjudicated for years").

In short, there is currently no effective way for most individuals detained under § 1226(c) to challenge their unnecessary -- and therefore improper -- prolonged detentions.

**C. Government Interest**

The third Mathews factor considers "the [g]overnment's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Mathews, 424 U.S. at 335. As the Supreme Court has recognized, "[t]here is always a public interest in prompt execution of removal orders." Nken v. Holder, 556 U.S. 418, 436 (2009). Undoubtedly, keeping noncitizens detained during their removal proceedings guarantees the government will be able to find them and promptly effectuate removal when it is ordered. The need to detain the class of individuals subject to § 1226(c) is supported by Congress's finding that individuals with criminal histories pose a heightened risk of flight or danger to the community. See Demore, 538 U.S. at 518-22. Thus, mandatory detention pending deportation, without considering its duration, serves the government's interest. See id. at 528 ("[D]etention necessarily serves the purpose of preventing deportable criminal aliens from fleeing prior to or

- 40 -

during their removal proceedings, thus increasing the chance that, if ordered removed, the aliens will be successfully removed.").

However, as we pointed out in Hernandez-Lara, framing the government interest in this way is somewhat misleading. The question is not whether the government has the power to detain noncitizens who may cause harm or flee while they await removal, but whether the Due Process Clause conditions the exercise of that power. In Hernandez-Lara, the issue was "who should bear the burden of proving noncitizens pose a danger or a flight risk." 10 F.4th at 32. Here, the issue is whether "criminal aliens" in prolonged detention under § 1226(c) should receive a bond hearing after six months to determine whether the ongoing restraint on their liberty in fact serves the asserted government interest. See Rodriguez v. Robbins, 804 F.3d 1060, 1077 (9th Cir. 2015) ("Bond hearings do not restrict the government's legitimate authority to detain inadmissible or deportable non-citizens; rather, they merely require the government to 'justify denial of bond[.]'" (quoting Singh v. Holder, 638 F.3d 1196, 1203 (9th Cir. 2011))), rev'd sub nom. Jennings, 138 S. Ct. at 836.[19] The only individuals released should be those who are not a danger or a

---

[19] As indicated above, see supra note 5, the Supreme Court's reversal of Rodriguez v. Robbins on statutory interpretation grounds does not undermine this observation within its analysis.

flight risk -- that is, individuals the government has no reason to detain.

Further, as we discussed in Hernandez-Lara, unnecessary immigration detention in fact harms the public interest. We described the "substantial societal costs" as follows:

> [N]oncitizens subject to immigration detention include spouses, children, and parents of U.S. citizens, caretakers of children and elderly relatives, and leaders in religious, cultural, and social groups. The needless detention of those individuals thus "separates families and removes from the community breadwinners, caregivers, parents, siblings and employees." Those ruptures in the fabric of communal life impact society in intangible ways that are difficult to calculate in dollars and cents. Even so, as twenty states report in an amicus brief to this court, the financial costs imposed by such widespread communal disruption are severe: "[States'] revenues drop because of reduced economic contributions and tax payments by detained immigrants, and their expenses rise because of increased social welfare payments in response to the harms caused by unnecessary detention."

10 F.4th at 33 (citation omitted).[20] We also considered the direct fiscal cost of detention. Holding a person in immigration detention costs the government about $134 per person per day. Id.

---

[20] The label "criminal alien" may obscure the fact that many noncitizens subject to § 1226(c) are valued community members. See Saysana v. Gillen, 590 F.3d 7, 17 (1st Cir. 2009) (acknowledging that some noncitizens detained pursuant to § 1226(c) may have "longstanding community ties"). They may be parents, spouses, caregivers, or community leaders, and may also work, contribute to the economy, and pay taxes. And, as noted

These same countervailing government interests apply with even more force in the context of prolonged detention. Based on the $134 figure, at six months, the government will have spent about $24,120 on a noncitizen's detention. See also Hernandez v. Sessions, 872 F.3d 976, 996 (9th Cir. 2017) (describing the cost of immigration detention as "staggering" and considering these costs as part of "the general public's interest in the efficient allocation of the government's fiscal resources"). Both research and commonsense suggest that families and communities suffer greater harms from prolonged detention than from short-term detention.[21] Bond hearings after six months would thus serve the public interest by providing a mechanism for the release of individuals who do not need to be detained, while continuing the detention of those who do pose a flight risk or danger to the community.

---

above, a person may be subject to § 1226(c) for relatively minor offenses. Certainly, there is a strong public interest in prolonged detention of noncitizens who have committed violent felonies. But individuals with violent histories will surely not be granted bond by IJs.

[21] For example, "[c]hildren of prolonged detainees are more likely to exhibit adverse changes in sleeping habits and behavior, including increased anger and withdrawal, as compared with children who are reunited with parents within a month of apprehension." Br. of Amici Curiae 35 Scholars, at 20-21. The prolonged absence of a caregiver also may lead to children being placed in foster care, or families turning to public benefits programs, at the expense of the state. See id. at 21.

Providing a bond hearing for every noncitizen detained for six months or longer would of course impose an administrative burden on the government. Immigration courts already are challenged by heavy caseloads resulting from the asylum process and other immigration matters, and increased availability of bond hearings would add to their burden. On the other hand, because bond hearings are routine in immigration courts, mandating bond hearings after six months for § 1226(c) detainees would not require new procedures and, thus, should not unduly increase the burden of administration. Moreover, the alternative suggested by my colleagues -- habeas proceedings in federal court -- also comes with a cost to the government.

Unquestionably, the government has a strong interest in detaining a subclass of deportable noncitizens it has found to pose unique risks, and a categorical requirement for bond hearings after six months would produce some unavoidable administrative costs. However, the steep fiscal and societal costs of prolonged, improper detention of the many individuals who pose no risk must also be factored into our assessment of the government's interest. See Hernandez-Lara, 10 F.4th at 32 n.5 (noting that the government has not suggested that it "could detain a noncitizen who has shown he is not a danger or flight risk" because, "fundamentally, any detention must 'bear[] [a] reasonable relation to [its] purpose'" (alterations in original) (quoting Zadvydas, 533 U.S. at 690)).

Thus, given the competing considerations, the third Mathews factor -- the government interest in detaining noncitizens under § 1226(c) without an automatic bond hearing after six months -- does not affect the balance one way or the other.

**D.  Balancing the Factors**

Our assessment of the first factor in the Mathews framework reveals that the hardship for detainees -- and, consequently, the burden on their liberty interest -- dramatically increases with the passage of time, while the government's interest in categorical detention remains unchanged.  Also apparent is the substantial risk that many individuals will be erroneously deprived of their liberty -- the second factor -- unless bond hearings are held to test the government's presumption of dangerousness or likelihood of flight.  The first two factors thus weigh heavily toward the detainees' right to a bond hearing.  The third factor -- the government's interest -- does not favor either side.  Hence, applying the Mathews framework unequivocally demonstrates that noncitizens subject to § 1226(c) detention for six months -- a duration long understood to elevate the need for procedural protections -- are entitled to a bond hearing as a matter of constitutional due process.

That conclusion does not minimize the government's strong interest in the mandatory detention of certain noncitizens with criminal convictions.  The government's interest can be met,

however, without placing an unjustified burden on the liberty of noncitizens detained under § 1226(c) who present no risk of danger or flight.  In Demore, it mattered that the possibility of improper detention was only for a "brief period."  See, e.g., 538 U.S. at 513.  As described above, the individuals detained and society as a whole experience greater losses from prolonged detention, and we therefore must assign greater weight to the need for procedural protections than when detentions are brief.

To be sure, "Congress may make rules as to aliens that would be unacceptable if applied to citizens."  Id. at 522.  Nonetheless, the Supreme Court "has consistently held that due process 'applies to all "persons" within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent.'"  Hernandez-Lara, 10 F.4th at 43 (quoting Zadvydas, 533 U.S. at 693).  Hence, despite Congress's substantial authority to regulate noncitizens, we cannot defer to legislative judgments that disregard the constitutional restraints on government actions burdening individual rights -- with the right to liberty arguably foremost among them.  See id. ("[O]urs is a system in which even the most sensitive and critical exercises of power by the political branches can be constrained by the rights of the individual.  In few instances are those constraints more necessary than when the government seeks to lock up individuals behind bars."); id. at 42-43 (stating that it is the judiciary's

duty to "'say what the law is,' even in immigration and detention cases, and even where doing so requires setting aside Congressional enactments, executive actions, or state statutes" (citation omitted) (quoting Marbury v. Madison, 5 U.S. 137, 177 (1803)).

For the reasons I have identified, individualized adjudication via the habeas process will not adequately remove the impermissible burden on the right to liberty experienced by § 1226(c) detainees. That option is simply not available, as a practical matter, to many -- if not most -- of those individuals. By contrast, a clear and categorical rule will be effective in protecting the right to liberty without undue burden on the government, and the six-month trigger for a bond hearing is the timeframe most consistent with precedent. See id. at 44-45 (noting that the Supreme Court has often announced categorical due process rules, and "[i]n none of these cases did the Court limit its holding to the specific individual before it or indicate that the requirements of due process would fluctuate based on the strength of any particular individual's case on the merits").

I regret that my colleagues have avoided the important issue in this case based on speculation about what the Supreme Court will say about a question that it has not yet confronted. Indeed, as I have explained, to the extent Demore conveys a message about prolonged detentions, it is that the interests at stake differ from those implicated by short-term detentions. See supra;

see generally Salerno, 481 U.S. at 755 ("In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception."); Addington, 441 U.S. at 425 ("This Court repeatedly has recognized that civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection.").

Maintaining the status quo leaves untold numbers of noncitizens who pose no danger to the public or risk of flight to languish for months -- or even years -- with no meaningful ability to demonstrate their entitlement to release from detention. The Constitution does not allow the government to subject any person within our borders -- citizen or noncitizen -- to detention in excess of six months without a bond hearing. The Supreme Court has never said otherwise. We can and should take this opportunity to hold that six months is the constitutional endpoint for unexamined detention. Accordingly, I must dissent.