# United States Court of Appeals
## For the First Circuit

No. 24-1119

G.P.,

Petitioner, Appellant,

v.

MERRICK B. GARLAND, U.S. Attorney General; TODD LYONS, Field
Office Director, Enforcement and Removal Operations, U.S.
Immigration and Customs Enforcement; CHRISTOPHER BRACKETT,
Superintendent, Strafford County Department of Corrections,

Respondents, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Paul J. Barbadoro, U.S. District Judge]

Before

Barron, Chief Judge,
Selya and Howard, Circuit Judges.

SangYeob Kim, with whom Gilles Bissonnette and American Civil
Liberties Union of New Hampshire were on brief, for appellant.

Jeffrey M. Hartman, Trial Attorney, Office of Immigration
Litigation, Civil Division, U.S. Department of Justice, with whom
Brian Boynton, Principal Deputy Assistant Attorney General, Civil
Division, Song Park, Assistant Director, Office of Immigration
Litigation, Sarah S. Wilson, Assistant Director, Office of
Immigration Litigation, and Jesi J. Carlson, Senior Litigation
Counsel, Office of Immigration Litigation were on brief, for
appellees.

June 11, 2024

**HOWARD**, **Circuit Judge**. Petitioner G.P. has been held in immigration detention since October 2020 while he seeks protection under the Convention Against Torture (CAT) against removal to his home country of the Dominican Republic. See G.P. v. Garland, No. 21-2002, 2023 WL 4536070 (1st Cir. July 13, 2023) (remanding for further consideration of CAT claim). During the course of his confinement, the Department of Homeland Security (DHS) has repeatedly reviewed his custody status and found that he would pose a danger to the community if released. Unsatisfied with these results, G.P. brought the instant application for a writ of habeas corpus, see 28 U.S.C. § 2241(b), arguing that there is "no significant likelihood of [his] removal in the reasonably foreseeable future," Zadvydas v. Davis, 533 U.S. 678, 701 (2001), and that he should therefore be released subject to supervision. The district court disagreed, and G.P. now appeals. Finding no error in the district court's conclusion, we affirm.

## I.

G.P. is a 52-year-old native of the Dominican Republic who first entered the United States unlawfully in 1993. Two years later, he was convicted in Massachusetts state court for trafficking cocaine. He spent 17 years in prison and was subsequently removed to the Dominican Republic. In 2017, G.P. unlawfully entered the United States for a second time and, once again, quickly became enmeshed in legal trouble when he was

arrested by federal authorities for his involvement in a sizeable fentanyl-trafficking organization. G.P. pled guilty to the charges that he was facing, cooperated with the government in its prosecution of the leader of the enterprise, and was sentenced to three years' imprisonment. While serving that sentence, G.P. was attacked by two other inmates who claimed to be friends of the leader of the trafficking organization.

DHS reinstated G.P.'s original removal order following the end of his federal prison sentence in October 2020 with the intention of removing him for a second time. See 8 U.S.C. § 1231(a)(5). G.P., however, expressed a fear of retaliation in the Dominican Republic on account of his cooperation with the government. An asylum officer found that fear to be credible and accordingly placed G.P. into withholding-only proceedings. See 8 C.F.R. § 1208.31(e).

Appearing before an immigration judge (IJ), G.P. applied for deferral of removal under CAT. See 8 C.F.R. § 1208.17(a). In support of that application, he offered the testimony of an expert witness who claimed that G.P. faced a "very high risk of being targeted and physically harmed by a range of forces" if removed to the Dominican Republic. The IJ found that the expert had testified credibly but nonetheless denied G.P. relief. The Board of Immigration Appeals (BIA) affirmed that decision in December 2021, and G.P. filed a petition for review in this court. We granted

that petition in July 2023, reasoning that the IJ's decisions regarding the expert witness' testimony were not shown to be supported by substantial evidence, see G.P., 2023 WL 4536070, at *1, and remanded to the agency for further consideration of G.P.'s claim for relief.[1]

G.P. has been held in immigration detention since October 2020 as his withholding-only proceedings have unfolded. That detention has been subject to review pursuant to both DHS regulations and COVID-related litigation. Specifically, DHS has repeatedly considered the issue of his confinement under 8 C.F.R. § 241.4, as well as the since-vacated preliminary injunction in Fraihat v. U.S. Immigration & Customs Enforcement, 445 F. Supp. 3d 709, 750–51 (C.D. Cal. 2020), vacated, 16 F.4th 613 (9th Cir. 2021). Additionally, a federal district court provided G.P. a bail hearing in connection with Gomes v. U.S. Department of Homeland Security, 460 F. Supp. 3d 132 (D.N.H. 2020), where it found that the government had met its burden of proving by clear and convincing evidence that he would pose a danger to the community if released.

G.P. now brings this collateral attack on his detention.[2] He argues that, under Zadvydas, he is entitled to be released

---

[1] G.P.'s hearing in front of the IJ on remand commenced in April of this year and has been continued until June 25, 2024.

[2] G.P. initially filed with us a motion for temporary release while the petition for review in his underlying withholding-only

- 5 -

subject to supervision because there is "no significant likelihood of [his] removal in the reasonably foreseeable future."  Id. at 701.  The district court entered judgment denying his application in January 2024, and G.P. timely appealed.

**II.**

We begin our consideration of G.P.'s appeal by sketching out the relevant legal framework.

Congress has created an "expedited [removal] process" for noncitizens who reenter the United States unlawfully after having previously been removed.  See Johnson v. Guzman Chavez, 594 U.S. 523, 529-30 (2021); 8 U.S.C. § 1231(a).  Specifically, "the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed."  § 1231(a)(5); see Garcia Sarmiento v. Garland, 45 F.4th 560, 563 (1st Cir. 2022).  DHS must then remove the noncitizen within a 90-day "removal period."  See Guzman Chavez, 594 U.S. at 528 (citing § 1231(a)(1)(A)).  Detention is mandatory during the removal period, see § 1231(a)(2), and may be extended into a "post-removal[]period" in certain circumstances, see Guzman Chavez, 594 U.S. at 528-529 (citing §§ 1231(a)(1)(C), (c)(2)(A), (a)(6)).  If none of those circumstances apply, a noncitizen "who is not removed

proceedings remained pending.  We treated that motion as an application for a writ of habeas corpus under 28 U.S.C. § 2241(b) and ordered it transferred to the District of New Hampshire.  See Fed. R. App. P. 22(a).

within the 90-day removal period will be released subject to supervision." Id. at 529 (citing § 1231(a)(3)).

This expedited process notwithstanding, a noncitizen who is subject to a reinstated removal order may seek to prevent removal to a specific country by obtaining statutory withholding of removal or relief under CAT. See id. at 530-32 (describing withholding-only procedures). In Guzman Chavez, the Supreme Court held that § 1231 governs the detention of a noncitizen with a reinstated removal order while the noncitizen pursues these forms of relief. Id. at 526.

Section 1231 "does not specify a time limit" on how long DHS may detain a noncitizen. See id. at 529; see also Johnson v. Arteaga-Martinez, 596 U.S. 573, 576 (2022) (holding that § 1231(a)(6) does not require the government "to offer detained noncitizens bond hearings after six months of detention in which the [g]overnment bears the burden of proving by clear and convincing evidence that a noncitizen poses a flight risk or a danger to the community"). DHS regulations, however, provide an opportunity for a noncitizen to secure release during the post-removal period on a showing that the noncitizen would not pose a danger to the community or significant flight risk. See 8 C.F.R. § 241.4(d)(1).

Additionally, in Zadvydas, the Supreme Court "read an implicit limitation into the statute . . . in light of the

Constitution's demands" and held that it authorizes detention only for "a period reasonably necessary to bring about [an] alien's removal from the United States." 533 U.S. at 689. The Zadvydas Court recognized a six-month window following the removal period during which a noncitizen's detention is presumptively reasonable. Id. at 701. After that, if the noncitizen "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the [g]overnment must respond with evidence sufficient to rebut that showing" or release the noncitizen subject to supervision. Id.; see also 8 C.F.R. § 241.13 (setting out Zadvydas procedures); Clark v. Martinez, 543 U.S. 371, 377-78 (2005) (applying Zadvydas to a different class of noncitizens detained under § 1231(a)(6)).

With this framework in mind, we turn to the merits of G.P.'s appeal. We have jurisdiction under 28 U.S.C. § 1291, and our review is de novo. See Hernandez-Lara v. Lyons, 10 F.4th 19, 26 (1st Cir. 2021)

**III.**

**A.**

G.P. argues that, under Zadvydas, he is entitled to be released subject to supervision because there is "no significant likelihood of [his] removal in the reasonably foreseeable future." This, he contends, is especially true following our decision to

remand his withholding-only proceedings to the agency for additional consideration.

The argument stumbles out of the gate because G.P.'s situation is readily distinguishable from Zadvydas. There, two noncitizens brought habeas petitions to challenge their post-removal-period detention. The first had been born in 1948 to Lithuanian parents in a displaced persons camp in Germany before immigrating to the United States when he was eight years old. 533 U.S. at 684. After being convicted of a series of crimes, he was ordered deported to Germany in 1994. Id. The noncitizen's removal hit a snag, however, when Germany, Lithuania, and the Dominican Republic (his spouse's home country) all refused to accept him. Id. The second noncitizen in Zadvydas had been born in Cambodia in 1977. Id. at 685. His family fled that country when he was a child, eventually settling in the United States, where the noncitizen was convicted of manslaughter for his involvement in a gang-related shooting in 1995. He was ordered removed after serving two years' imprisonment, but Cambodia -- which had no repatriation treaty with the United States -- refused to accept him. Id. at 685-86.

The Supreme Court has characterized the predicament that these two noncitizens found themselves in as a "removable-but-unremovable limbo." Jama v. Immigr. & Customs Enf't, 543 U.S. 335, 347 (2005). Crucially, both had exhausted administrative and

judicial remedies to prevent removal and were being detained only because the government was struggling to find a country to take them in. Zadvydas, 533 U.S. at 684-86. Accordingly, the Court described their confinement as "not limited, but potentially permanent," contrasting their situations with that in Carlson v. Landon, 342 U.S. 524 (1952), where the Court "uph[e]ld[] temporary detention of [an] alien during deportation proceeding[s] while noting that [any] 'problem of . . . unusual delay' was not present." Id. at 691 (quoting Carlson, 342 U.S. at 546).

G.P., on the other hand, has not exhausted his administrative remedies. Rather, he is being detained because his CAT proceedings remain pending. While we acknowledge that the length of those proceedings now well surpasses the presumptively reasonable six-month post-removal period set out in Zadvydas, there is no indication that they have dragged on because of bad faith or undue delay by the agency. Furthermore, G.P. does not dispute that, if he is ultimately denied relief, the government will be able to move forward with removing him for a second time to the Dominican Republic. There thus appears to be little chance of a removable-but-unremovable limbo for him. See id. at 697 ("[P]ost-removal-period detention, unlike detention pending a determination of removability or during the subsequent 90-day removal period, has no obvious termination point." (emphasis added)). Instead, once G.P.'s current withholding-only

proceedings end, he will either be removed to the Dominican Republic or the government will have to begin the process of finding a different country to accept him. Under the present circumstances then, he has failed to show that there is "no significant likelihood of [his] removal in the reasonably foreseeable future." Id. at 701; cf. Jennings v. Rodriguez, 583 U.S. 281, 298-304 (2018) (characterizing detention of noncitizens during immigration proceedings under 8 U.S.C. §§ 1225(b)(1), 1225(b)(2), and 1226(c) as lasting "for a specified period of time" or, alternatively, having "a definite termination point" (quoting Demore v. Kim, 538 U.S. 510, 529 (2003))).

**B.**

In concluding that G.P. is not entitled to habeas relief, we align ourselves with all of the circuit courts that have considered analogous circumstances. Most recently, the Fourth Circuit rejected a nearly identical challenge to post-removal-period detention during withholding-only proceedings. See Castaneda v. Perry, 95 F.4th 750 (4th Cir. 2024). We find the Castaneda court's reasoning persuasive.

The noncitizen there had a previous order of removal reinstated in 2019 and had been detained while he pursued relief under CAT. Id. at 753 & n.1. Those proceedings accrued a labyrinthine history during his confinement: Twice an IJ granted the noncitizen CAT relief, but both times the BIA remanded. Id.

- 11 -

at 753-54. Following the second remand, the IJ changed course and denied the petitioner relief. Yet once again, the BIA did not affirm, sending the case back to the IJ to hear for a fourth time. Id. at 754. The noncitizen brought a habeas petition, arguing that his continued detention ran afoul of Zadvydas and the Due Process Clause.[3] Id.

Much like us, the Fourth Circuit found it significant that the noncitizen's detention "simply [was] not the type of indefinite and potentially permanent detention at issue in Zadvydas." Id. at 757 (internal quotations omitted). Instead, the court reasoned, "withholding-only proceedings are finite." Id. And because they "have a definite ending point, then so too must the detention pending the resolution of those proceedings." Id.

The Fourth Circuit additionally surveyed the courts of appeal and found that "[t]o reach a contrary result would be to go against th[e] clear weight of authority and create a circuit split." Id. at 759. We concur. See Martinez v. Larose, 968 F.3d 555, 565 (6th Cir. 2020) ("If [petitioner] does not prevail in his pending actions before this court and the BIA, nothing should impede the government from removing him to El Salvador."); Prieto-

---

[3] G.P. challenges his detention under only Zadvydas. Unlike the Fourth Circuit then, we need not consider any constitutional claim.

<u>Romero</u> v. <u>Clark</u>, 534 F.3d 1053, 1063 (9th Cir. 2008) ("It is true that [petitioner's] detention lacks a certain end date, but this uncertainty alone does not render his detention <u>indefinite</u> in the sense the Supreme Court found constitutionally problematic in <u>Zadvydas</u>."); <u>Soberanes</u> v. <u>Comfort</u>, 388 F.3d 1305, 1311 (10th Cir. 2004) ("[F]or now, [petitioner's] detention is clearly neither indefinite nor potentially permanent like the detention held improper in <u>Zadvydas</u>; it is, rather, directly associated with a judicial review process that has a definite and evidently impending termination point . . . .").

## C.

G.P. endeavors unsuccessfully to deal with this one-sided body of case law. He concedes that he is unable to provide any decision where a court ordered a noncitizen to be released under <u>Zadvydas</u> while removal or withholding-only proceedings remained pending before the agency.[4] This, G.P. contends, is of

---

[4] The closest that G.P. comes to citing such a case are his references to <u>Nadarajah</u> v. <u>Gonzales</u>, 443 F.3d 1069 (9th Cir. 2006), but these are unavailing. In <u>Nadarajah</u>, the Ninth Circuit adopted the reasoning of <u>Zadvydas</u> in interpreting 8 U.S.C. § 1225(b) and granted habeas relief to a noncitizen detained under that statute. <u>See</u> <u>id.</u> at 1071, 1076–78. <u>But see</u> <u>Jennings</u>, 583 U.S. at 297–301 (declining to apply the reasoning of <u>Zadvydas</u> in interpreting § 1225(b)). Unlike G.P., the noncitizen in <u>Nadarajah</u> no longer had an immigration case that was pending in front of an IJ or the BIA. Instead, after the IJ <u>granted</u> the noncitizen asylum and relief under CAT and that decision was <u>affirmed</u> by the BIA, the BIA Chairperson made the "unusual move" of referring the noncitizen's case to the Attorney General. <u>See</u> <u>Nadarajah</u>, 443 F.3d at 1075; 8 C.F.R. §§ 1003.1(d)(7)(i), (h). With no indication

no matter because his case is "unique."  Namely, he points to our decision in his withholding-only proceedings, G.P., 2023 WL 4536070, which he posits, "will render it extremely difficult for the IJ and the BIA to deny his relief."

Central to G.P.'s argument is a belief that it is appropriate for this court, in this collateral proceeding, to weigh in on the merits of his underlying CAT claim on remand before the agency.  We have significant doubts about that proposition.  See I.N.S. v. Orlando Ventura, 537 U.S. 12, 16 (2002) ("Within broad limits the law entrusts the agency to make the basic . . . decision here in question.  In such circumstances[,] a 'judicial judgment cannot be made to do service for an administrative judgment.'" (citations omitted) (quoting SEC v. Chenery Corp., 318 U.S. 80, 88 (1943))); cf. Nasrallah v. Barr, 590 U.S. 573, 580–81 (2020) ("CAT orders . . . may not be reviewed in district courts, even via habeas corpus . . . ." (citing 8 U.S.C. § 1252(a)(4))).

---

of when the Attorney General would get around to considering the noncitizen's ongoing detention, the Ninth Circuit found that habeas relief was appropriate.  Nadarajah, 443 F.3d at 1081 ("By any analysis, a five-year period of confinement of an alien who has not been charged with any crime, and who has won relief at every administrative level, is unreasonable under the standards set forth by the Supreme Court.").  Notably, however, the Ninth Circuit later rejected an attempt to analogize to Nadarajah by a noncitizen with a pending petition for review in his underlying case who had been detained for over three years.  See Prieto-Romero, 534 F.3d at 1056, 1064–65.  We find Prieto-Romero more akin to the instant case and thus see Nadarajah as no barrier to our conclusion that G.P. is not entitled to habeas relief.

- 14 -

Those doubts are not assuaged by the fact that G.P.'s primary strategy to head them off is to direct us to our withdrawn opinion in Reid v. Donelan, 819 F.3d 486 (1st Cir. 2016), withdrawn, Nos. 14-1270, 14-1803, 14-1823, 2018 WL 4000993 (1st Cir. May 11, 2018). There, we considered a class action brought by noncitizens detained under 8 U.S.C. § 1226(c) pending their removal proceedings. Reid, 819 F.3d at 491. We read § 1226(c) to contain an implicit reasonableness limitation that, if violated, entitled a noncitizen to a bond hearing. Id. at 494-95, 498. G.P. seizes on the last of the factors that we stated a "court might examine" in conducting its reasonableness inquiry: "the likelihood that the [underlying] proceedings will culminate in a final removal order." Id. at 500. He contends that we should take this guidance as a green light to conjecture the outcome of his withholding-only proceedings on remand.

The effort is misguided for several reasons. First, our 2016 opinion in Reid was interpreting a different statute than the one at issue here -- § 1226(c) rather than § 1231(a). It was also considering a different remedy -- a bond hearing for the detained noncitizens rather than release subject to supervision. But most fundamentally, the Supreme Court subsequently rejected the notion that § 1226(c) contains any implicit reasonableness limitation, see Jennings, 583 U.S. at 303-06, which prompted us to withdraw

our 2016 opinion.[5]  See 2018 WL 4000993, at *1.  We are therefore in no way bound by the decision.  Cf. Williams v. Ashland Eng'g Co., 45 F.3d 588, 592 (1st Cir. 1995) ("An existing panel decision may be undermined by controlling authority, subsequently announced, such as an opinion of the Supreme Court . . . ."), abrogated on other grounds by Carpenters Loc. Union No. 26 v. U.S. Fid. & Guar. Co., 215 F.3d 136 (1st Cir. 2000).

G.P.'s argument is further weakened by his failure to cite a case in which a court of appeals in a collateral proceeding has conducted the type of merits inquiry that he asks us to undertake.  Instead, he points to several of the cases cited above, see Martinez, 968 F.3d at 565; Prieto-Romero, 534 F.3d at 1065; Soberanes, 388 F.3d at 1311, in which he contends the courts "considered the procedural posture and likelihood that the petitioners would end up being removed for the assessment of whether removal was reasonably foreseeable."  But the noncitizens in these three cases were all denied Zadvydas relief.  And there is nothing in the decisions to suggest that any of those courts based its decision to deny relief on an estimation of the merits of the noncitizen's underlying immigration proceedings.

_____

    [5] We later held in the same litigation that there is no per se constitutional requirement to a bond hearing after six months of detention.  See Reid v. Donelan, 17 F.4th 1, 7-9 (1st Cir. 2021).

Finally, it is worth considering the wide-ranging implications of the position that G.P. urges us to adopt. G.P. acknowledged at oral argument that, under his theory, he could have brought a habeas petition under Zadvydas six months and a day after being detained, at which point, by his reasoning, the court would have been obligated to examine the merits of his bid for CAT relief. This would hold true, presumably, even if the IJ had yet to issue any decision in the underlying case. Despite this invitation to open the door to what would essentially amount to collateral attacks on proceedings that have yet to occur, G.P. could not provide us the standard by which he would have us assess the likelihood of the noncitizen's success in those proceedings.

Even in a hypothetical case where we could somehow say with complete certainty that a noncitizen was going to prevail in withholding-only proceedings, the Zadvydas inquiry would not necessarily end there. That is because "withholding-only relief is country-specific. It relates to where an alien may be removed. It says nothing, however, about the antecedent question whether an alien is to be removed from the United States." Guzman Chavez, 594 U.S. at 536. G.P. tells us that he fears being removed to any country in the world. Therefore our task, following his preferred approach, would conceivably include ascertaining the likelihood of his success in yet-to-be-commenced withholding-only proceedings with respect to any country to which the government may attempt to

send him should it prove unable to remove him to the Dominican Republic.  Given the lack of precedent to support G.P.'s position, we decline to go down that path.

**\*\*\***

For the foregoing reasons, the judgment of the district court is **<u>affirmed</u>**.